UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERROLL D. WORTHY,<br>        Plaintiff,<br><br>          v.<br><br>NANCY A. BERRYHILL,<br>ACTING COMMISSIONER,<br>SOCIAL SECURITY<br>ADMINISTRATION,[1]<br>        Defendant. | No. 3:15-cv-1762 (SRU) |

# ORDER

On December 1, 2015, the plaintiff, Erroll Worthy, filed a complaint seeking review of the Social Security Commissioner's decision to deny his application for Disability Insurance Benefits. (doc. 1) The parties have subsequently filed cross-motions seeking to overturn and affirm the Commissioner's decisions respectively. (docs. 12 and 14) On July 21, 2016, I held a hearing on those motions.

For the following reasons, I **deny** Worthy's motion for a remand and **grant** the Commissioner's motion to affirm.

## I.    Standard of Review

A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). It is not the court's function to determine *de novo* whether the claimant was disabled. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Berryhill is thus automatically substituted for Colvin in this case.

must review the record to determine first whether the correct legal standard was applied and then whether the record contains substantial evidence to support the decision of the Commissioner. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

When determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Substantial evidence need not compel the Commissioner's decision; rather substantial evidence need only be evidence that "a reasonable mind might accept as adequate to support [the] conclusion" being challenged. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (internal quotation marks and citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks and citation omitted).

**II.    Background**

The parties have filed a joint stipulation of the facts and procedural history in this case. Joint Stipulation, (doc. 13-1). The pertinent portions are summarized below.

A.  Factual Background

Worthy is a high school graduate born in 1966. His only past relevant work was as a trash collector. Worthy asserts that he has been disabled since September 2, 2006, *see* Compl. at ¶ 4; however, the joint medical history does not identify any specific diagnoses or injuries before May 2012, apparently because a previous negative ALJ decision prohibits him from recovering

through that date. The Joint Stipulation suggests that the root cause of Worthy's disabilities was a work-related injury.

In February 2012, before the period described by the joint stipulation, Worthy was admitted to a rehabilitation program for mood disorder and cannabis dependence, but was discharged after one session for non-compliance. (R. at 433–45)

In May 2012, Worthy complained of an inability to sleep, but examination and follow-up studies of his spinal nerves found no irregularities. In June 2012, he presented with chronic neck pains and spasms, and was diagnosed with chronic pain, depression and anxiety, and hypertension. Worthy was provided with a range of pain medications. He also reported that he had been working out twice weekly, walking, and staying active. (R. at 452) In September 2012, Worthy presented with an abnormally fast heart rate, and was referred for additional studies and given refills on his pain medications. On October 3, 2012, he reported that his pain was "under control" on the medications. It appears that Worthy continued to complain about pain in his neck and back, for which his pain medications were continually refilled through the date of the ALJ hearing.

In October 2013, Worthy was seen for depression in addition to his pain complaints. In November 2013, Worthy underwent a lumbar spine MRI, which revealed compression of various spinal nerves and a discomfort-causing deterioration of the facet joints in the spine. In January 2014, Worthy also reported that he had been doing construction work from June through August of 2013. (R. at 645) He stated, however, that engaging in that work had worsened his pain symptoms. *Id.* In addition to his chronic pain, he was also diagnosed with a kidney disease at that time.[2]

---

[2] The kidney disease is not one of Worthy's claimed disabilities.

1.  *Dr. Franklin-Zitzkat's Report*

On August 2, 2013, Dr. Liese Franklin-Zitzkat, the Social Security Administration's Examining Psychologist, examined Worthy. (R. at 601–605) She diagnosed a major depressive disorder and an anxiety disorder. She observed that Worthy had "exhibited only mild difficulty" with a task assessing short-term memory, but based on his self-reporting, she determined that he would have "moderate to marked difficulty" remembering instructions and maintaining concentration at work or withstanding the stress of an average work day. She observed that those conditions might improve if Worthy returned to work.

There appear to be no other evaluations of Worthy's concentration and memory based on in-person examination in the record.

2.  *Dr. Jonas' Report*

On February 26, 2014, Dr. Elizabeth Jonas completed a Spinal Impairment Questionnaire on Worthy. (R. at 673–85)[3] She indicated that she had been treating Worthy since before March 27, 2013, which is borne out by records showing her treatment in May 2012, (R. at 459–60), and that she had seen him approximately every four months. She diagnosed "severe lumbar and cervical degenerative disk disease" and "chronic pain syndrome," and observed that Worthy's prognosis was "poor." She stated that her conclusions were based on MRIs in November 2013 and May 2010. On the basis of those diagnoses, Dr. Jonas indicated that Worthy could sit for only one hour per eight-hour workday, and could stand between zero and one hours. She indicated that he could never lift or carry any weight, including in the zero-to-five pound range, that he could not tolerate even "low stress" work, and that he would need to take 15–20 minute breaks every half hour and take time off more than three times per month. She did not discuss

---

[3] The second copy of the report, (R. at 679–85), includes additional pages of responses, (R. at 683–84), and Dr. Jonas' signature.

4

how Worthy's previous self-reported periods of work and exercise comported with those conclusions, nor did she discuss Worthy's assertion to an examining physician in October 2013 that he could lift or carry no more than ten to fifteen pounds. (R. at 607) She also did not indicate that Worthy suffered from any psychological limitations to work.

Following the submission of her report, on September 10, 2014, Jonas indicated in a treatment note that Worthy reported that he had been "[m]oving and working at odd jobs a lot." (R. at 770) Jonas was not asked to update or reconcile her opinion with that information.

### 3. *Dr. Guarnaccia's Report*

On September 17, 2013, Dr. Joseph Guarnaccia examined Worthy at the behest of the Social Security Administration. (R. at 607–610) Worthy reported experiencing pain constantly in his lower back, (R. at 607), and using a cane "occasionally," (R. at 608). On the basis of his examination, Dr. Guarnaccia diagnosed Worthy with chronic lower back pain, migraine headaches, and unexplained numbness of the left arm. (R. at 610) He opined that Mr. Worthy would not be able to perform work activities that require "extending walking, standing, bending, lifting, or carrying." *Id.*

### 4. *Non-Examining Physicians*

Worthy's file was also reviewed by several non-examining physicians at the request of the State Agency. With respect to Worthy's physical limitations, both Dr. Virginia Rittner, who reviewed the file on September 18, 2013 before Dr. Jonas' report, and Dr. Kurshid Khan, who reviewed the file on February 3, 2014 after the Jonas report, determined that Worthy had the following exertional limitations: lifting twenty pounds occasionally and ten pounds frequently; sitting and standing for six hours each in an eight-hour workday; and occasionally performing postural activities, such as stooping, kneeling, and crouching. *See* (R. at 155–57, 172–73).

With respect to Worthy's mental limitations, Dr. Warren Lieb, who reviewed the file on August 16, 2013 and after Dr. Franklin-Zitzkat's report,[4] noted that Worthy's claimed problems with memory were not supported in the record, but observed that he would have some "moderate" limitations in his ability to carry out detailed instructions, maintain concentration for a long period of time, or interact appropriately with the general public. (R. at 157–58) Dr. Adrian Brown, who reviewed the file on February 7, 2014, came to similar conclusions. (R. at 188–90)

B.  Procedural History

Worthy filed an application for Social Security disability benefits on June 11, 2013, claiming a disability onset date of September 2, 2006, which date was later amended to June 16, 2012. After his initial application and request for reconsideration were denied, Worthy received a hearing before Administrative Law Judge Matthew Kuperstein (the "ALJ") on March 2, 2015. (R. at 99–131)

On May 29, 2015, the ALJ found that Worthy did not qualify for benefits. (R. at 60–75) His analysis followed the five-step evaluation process provided in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step One, the ALJ found that Worthy had not engaged in substantial gainful activity during the relevant period. (R. at 63) At Step Two, he determined that Worthy had the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine; depression; anxiety; and substance addiction disorder. *Id.* At Step Three, he determined that Worthy did not have an impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 65–67)

---

[4] I note that the joint stipulation of facts indicates that Dr. Lieb "reviewed files through March 2, 2012." JS at 9. That does not accord with either end point of the review – the "Evidence of Record" portion of the report in which Dr. Lieb's opinion is included lists Dr. Franklin-Ziztkat's August 6, 2013 report as well as sources going back to March of 2011. (R. at 146–49)

The ALJ determined that Worthy had the residual functional capacity to perform light work limited to only occasional climbing, balancing, stooping, kneeling, crouching, or crawling and to work that requires frequent, as opposed to constant, standing and/or walking and frequent, as opposed to constant, handing, fingering, and feeling bilaterally with the upper extremities. (R. at 67) Mentally, he determined that Worthy was limited to work that involves carrying out simple, repetitive tasks and to work with little collaboration with others and no contact with the general public. *Id.* In order to come to that determination, the ALJ found that Worthy's medically determinable impairments could have caused the symptoms about which he complained, but found his testimony about the intensity, persistence, and limiting effects of those symptoms to be "not entirely credible." (R. at 68)

The ALJ's skepticism of Worthy's physical limitations was based on, *inter alia*, evidence in the record that Worthy had been able to work out, walk, and perform the activities of daily living without severe physical dysfunction, inconsistent testimony about his need to walk with a cane, and Dr. Jonas' observation in 2012 that Worthy had a normal gait and motor strength. (R. at 68–69) The ALJ also observed that the portions of Dr. Jonas' report describing Worthy's Residual Functional Capacity ("RFC") appeared to rely heavily on his subjective reports and, without explanation, described limitations more severe than those observed in her own treatment notes and inconsistent with his self-reports to other physicians. (R. at 69–70, 72)

The ALJ also discounted Worthy's allegations regarding his mental limitations. (R. at 68) The ALJ stated incorrectly that Worthy had "testified to" limitations based on depression and anxiety, when Worthy had, in fact, made no statements about his mental health whatsoever during the hearing. *Id.* The ALJ also observed that Worthy had failed to continue with the rehabilitation program in 2012. (R. at 70) He discounted the portion of Dr. Zitzkat's report

7

regarding Worthy's limited memory and concentration, observing that it was contradicted by Worthy's ability to perform the activities of everyday life and by Dr. Jonas' observation that Worthy had a "normal affect." (R. at 71–72, 73) The ALJ emphasized Worthy's reported ability to handle his own finances, make simple meals, and to live alone with only limited support, as well as the fact that Worthy had reported doing some work after his onset date. (R. at 71–72) By contrast, the ALJ gave great weight to the state agency physician and psychologist assessments because they were "consistent with the record as a whole." (R. at 73)

At Step Four, the ALJ found that Worthy could not perform his past relevant work. (R. at 73) Finally, at Step Five, on the basis of the testimony of a Vocational Expert, the ALJ found that, taking Worthy's age, education, work experience, and RFC into account, there were jobs in significant numbers in the national economy that Worthy could perform, including mail sorter, order caller, and retail marker. (R. at 74–75)

Worthy requested review of the ALJ's decision on June 19, 2015, and the Appeals Council denied that request on October 2, 2015.

### III.   Discussion

Worthy challenges the ALJ's RFC determination as not supported by substantial evidence on four grounds: (1) the ALJ failed to give proper weight to Dr. Jonas' report under the "treating physician" rule; (2) the ALJ gave too much weight to a non-examining state agency physician; (3) the ALJ failed to give proper weight to Dr. Franklin-Zizkat's report as compared to the report of a non-examining psychologist; and (4) the ALJ failed to properly evaluate Worthy's credibility.

A. <u>Dr. Jonas' Report</u>

Worthy asserts that the ALJ erred when he gave "little weight" to Dr. Jonas' impairment questionnaire because the "treating physician" rule required greater deference to Dr. Jonas' opinion as a treating source. Pl.'s Br. at 1–2 (quoting R. at 72).

Under the "treating physician rule," a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is given "controlling weight" if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). The opinion of a treating source will not be afforded controlling weight, however, where the treating physician "issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[T]he less consistent th[e] opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

In circumstances where the treating physician's opinion is not entitled to receive "controlling" weight, the regulations require the ALJ to consider several factors to determine how much weight the physician's opinion should receive. *Halloran*, 362 F.3d at 32. Those factors include: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.*; 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). The ALJ must set forth his or her reasons for the weight assigned to a treating physician's

opinion in the notice of determination. *Id.* Failure to provide sufficient reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77 (2d Cir. 2012); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Snell*, 177 F.3d at 133.

Dr. Jonas was a treating physician to whom the rule should apply. The ALJ, however, gave her report little weight because it was inconsistent with other evidence in the record indicating that Worthy had normal motor strength and a normal range of motion. (R. at 72) The ALJ cited to an assessment by one of Dr. Jonas' colleagues on October 28, 2013 indicating normal muscle strength and foot dragging that "only occur[ed] after walking long distances," (R. at 648); an assessment by a doctor treating Worthy for liver disease on March 26, 2014 indicating a "normal range of motion," (R. at 688); and a progress note from a Registered Nurse on October 24, 2014 indicating that Worthy reported exercising regularly, (R. at 730). The ALJ also observed that Dr. Jonas did not explain her findings or provide examples of objective findings that would support the extent of the limitations she reported, leading him to believe that the report was overly reliant on Worthy's subjective complaints. (R. at 72)

Worthy argues that Dr. Jonas' citations to two MRIs and to a list of Worthy's diagnoses are sufficient to support her report. Pl.'s Br. at 2–3. But those references only establish that Worthy had some limitations, which the ALJ recognized; they are not responsive to the ALJ's concern, which is that Dr. Jonas failed to support the *extent* of those limitations. Worthy does not identify any objective medical evidence in the record supporting Dr. Jonas' contention that Worthy, for instance, could not sit or stand for more than one hour per day, or that he could not lift or carry any weight at all. He argues instead that the inconsistent evidence is not, in fact, inconsistent because those assessments were not made in the context of doing those activities

during the workday. Worthy is correct that the ALJ must take that context into account, *see Scandura v. Astrue*, 2009 WL 648611, at *9 (E.D.N.Y. Mar. 10, 2009); however, he has failed to point to any evidence in the record here that makes it unreasonable for the ALJ to extrapolate—from an ability to walk, exercise, and do odd jobs *in general*—an ability to at least occasionally do those same things during the working day.

Moreover, as the ALJ observed when discussing the non-examining physicians' reports, the record before Dr. Jonas when she was writing her 2014 report indicated that Worthy had reported being able to exercise regularly in June of 2012, (R. at 452), and had engaged in construction work from June through August of 2013, (R. at 645). After the report was submitted, Dr. Jonas herself indicated the Worthy had reported working at odd jobs "a lot" in September of 2014 without a significant deterioration in his condition. (R. at 770)

At the hearing on these motions, Worthy argued that his ability to do "odd jobs" for brief and sporadic periods did not necessarily mean that he has the ability to work an eight-hour day, and further noted that he reported doing construction work to his doctor precisely because that effort had exacerbated his pain. *See* (R. at 645). Those arguments misconstrue both the question at hand and the standard of review. At this step of the determination, the ALJ was not deciding whether Worthy had the ability to safely withstand an eight-hour day in construction but rather the weight to which Dr. Jonas' 2014 report was entitled in light of the record as a whole. And the substantial evidence standard does not require that the record *compel* the ALJ's determination, but only that it provides reasonable support. Here, it is certainly reasonable to conclude that the ability to do construction work for any period of time or to withstand an "odd job" without injury is inconsistent with Dr. Jonas' opinion that Worthy would be unable to, for instance, sit or stand for even an hour at a time or to lift any weight at all.

11

Accordingly, Worthy has failed to demonstrate that the ALJ's determination regarding Dr. Jonas' report was not supported by substantial evidence, and his motion for a reversal on that ground is **denied**.

B.  Non-Examining State Agency Physician

Worthy asserts that the ALJ compounded his error in giving little weight to the 2014 Jonas report by giving "great weight" to the non-examining state agency physicians' opinion. Pl.'s Br. at 3–4.

The Second Circuit has recognized that "[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of a treating source." *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993). Social Security regulations, however, "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record." *Id.* at 568 (citing 20 C.F.R. §§ 404.1527(f) [now (e)] and 416.927(f) [now (e)]); *see also Titles II & Xvi: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council*, SSR 96-6P, 1996 WL 374180 at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Worthy's main complaint is that the ALJ used the non-treating sources' opinions to override Dr. Jonas' report, Pl.'s Br. at 3–4; however, as discussed above, Dr. Jonas' opinion was also inconsistent with the assessments of other treating physicians, including her own colleague, during the course of treatment. Accordingly, because the ALJ did not *solely* rely on the non-

examining medical opinions to discount Dr. Jonas' report but instead awarded those opinions great weight after deeming them consistent with other evidence in the record, he was within the bounds set out by the Social Security regulations and Second Circuit law.

Worthy also complains that one of the relevant opinions was made on a "significantly underdeveloped file." Pl.'s Br. at 4–5. He points out that the opinion did not take into account any treatment records after November 2013, which does comprise a fair amount of the file. *See, e.g.*, (R. at 667–696) (exhibits wholly covering periods after November 2013); (R. at 644–66 and 697–798) (exhibits at least partially covering periods after November 2013). He points to SSR 96-6p, which states that one appropriate circumstance in which a non-treating source's opinion may be given greater weight than a treating source is when that opinion is "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6p, 1996 WL 374180 at *3. But SSR 96-6p does not indicate that is the *only* circumstance in which a non-treating source's opinion can be given great weight; in fact, it begins the quoted sentence with the phrase "for instance," indicating that there may be other possibilities. Here, the ALJ relied on his determination that the non-treating sources' opinion was consistent with other evidence in the file. Moreover, Worthy has failed to point out any aspect of the opinion that could not reasonably be considered to be consistent with the record, including portions of the record made after November 2013.

Accordingly, the ALJ did not err on this ground.

C. <u>Dr. Franklin-Zitzkat's Report</u>

Worthy asserts that the ALJ erred by giving little weight to Dr. Franklin-Zitzkat's report where she observed that Worthy would have "moderate to marked" difficulty with his memory,

13

concentration, and with the stresses of a normal workday. Pl.'s Br. at 6–8 (discussing report at R. at 604).

As noted above, Dr. Franklin-Zitzkat diagnosed Worthy with a major depressive disorder and an anxiety disorder. (R. at 604) She observed in a mental status exam that Worthy's short-term memory appeared to be "mildly impaired" because he had trouble completing a recall task, and because of self-reporting of persistent forgetfulness. (R. at 603) She observed that he was able to complete her concentration test, but noted that "based on his self-report and on what is typical for individuals with his diagnoses," he could have "moderate to marked difficulty" remembering instructions, sustaining concentration, and withstanding stress in a work context. (R. at 604)

The ALJ appears to have accepted Dr. Franklin-Zitzkat's diagnoses in general, because he included depression and anxiety in Worthy's list of "severe impairments." (R. at 63) He nevertheless discounted Dr. Franklin-Zitzkat's opinions regarding the extent of Worthy's resultant limitations in a workplace setting. In particular, he stated that Dr. Franklin-Zitzkat's report was "based on the claimant's statements rather than objective findings or the claimant's longitudinal treatment history" and that her "opinion of moderate to marked difficulty with remembering and sustaining concentration, and handling stress and the pressure of a routine workday is inconsistent with other treating sources findings." (R. at 73)

In order to evaluate the impact of the ALJ's determination here, it is necessary to understand what it means to have a "mild" "moderate" or "marked" limitation in the Social Security context. That language refers to the Social Security Administration's regulations guiding how ALJs should evaluate mental impairments. *See* 20 C.F.R. §§ 404.1520a(c)(1)–(4). Those regulations in turn point to the Listing of Impairments, 20 C.F.R. Part 404, subpt. P, app'x

14

1 § 12.00 (the "Listing"), which describes in further detail how mental disorders are assessed. The degree of limitation caused by any mental disorder to activities of daily living; social functioning; and concentration, persistence, or pace—the main areas about which Worthy complained—are rated on the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4).

Other court decisions put the stakes of that scale in context. Relevant to the present case, courts have routinely held that individuals suffering from "moderate" difficulties with memory, concentration, and handling stress could reasonably be found to have the residual functional capacity to perform "simple, routine and repetitive tasks." *See, e.g.*, *Bartell v. Comm'r of Soc. Sec.*, 2014 WL 4966149, at *4 (N.D.N.Y. Sept. 30, 2014); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013). The ALJ here similarly found that Worthy was mentally "limited to work that involves carrying out simple, repetitive tasks and to work that involves little to no collaboration with others, and not requiring contact with the general public." (R. at 67) Thus, the ALJ's RFC would not appear to change even if I determined that he had erred and the evidence unquestionably showed that Worthy suffered from "moderate" limitations in those areas. And because courts in the Second Circuit have consistently declined to remand if the plaintiff cannot show how correcting the ALJ's legal errors will reasonably result in a different outcome, *see, e.g.*, *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Larkin v. Astrue*, 2013 WL 4647229, at *4 (D. Conn. Aug. 29, 2013); *Sherman v. Comm'r of Soc. Sec.*, 2015 WL 5838454, at *5 (N.D.N.Y. Oct. 7, 2015) (collecting cases), there is accordingly no reason for me to investigate further whether the ALJ erred in declining to give substantial weight to Dr. Franklin-Zitzkat's opinion that Worthy's functions might be "moderately" impaired.

By contrast, sedentary plaintiffs with "marked" limitations on social functioning, concentration, and persistence have been found wholly unable to do even simple, low-skilled work. *See, e.g.*, *Mateo v. Colvin*, 2016 WL 1255724, at *3 (E.D.N.Y. Mar. 28, 2016); *Ramos v. Comm'r of Soc. Sec.*, 2015 WL 708546, at *9 (S.D.N.Y. Feb. 4, 2015). Accordingly, if I determine that the ALJ erred here by unreasonably discounting Dr. Franklin-Zitzkat's opinion that Worthy had "marked" mental limitations, the case should be remanded to determine whether adequate jobs exist in the market that could comport with Worthy's corrected RFC assessment.

The Social Security regulations provide a fairly loose definition of what a "marked" limitation is, describing the designation in terms of residual functional capacity. For instance, the Listing explains a "marked" limitation in concentration, persistence, or pace as follows:

> We do not define "marked" by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function. You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion.[5]  However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

---

[5] In order to be deemed "severe" under the Listing, a claimant must show in part that he has at least two of the so-called "Paragraph B" or "Paragraph C" criteria. Listing at § 12.00. Worthy complained about depression and anxiety-related disorders, both of which carry the same Paragraph B criteria, requiring at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation. *Id.* § 12.04(B), §12.06(B). The Paragraph C criteria for affective disorders, including depression, require: (1) repeated episodes of decompensation, each for extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.* § 12.04(C).The Paragraph C criteria for anxiety-related disorders require that the disorder "result[s] in complete inability to function outside the area of one's home." Listing § 12.06(C).

Listing at § 12.00(C)(3). The Listing also cautions that evaluations determining whether a claimant suffers from such limitations should be considered in light of the settings in which those tests were administered, and the additional pressures or supports that might be present during a normal workday. *Id.*

There is substantial evidence in the record to support the ALJ's finding that Dr. Franklin-Zitzkat's determination of "marked" limitations should be given lesser weight. The ALJ's opinion suggests he discounted Dr. Franklin-Zitzkat's account not only because it was overly reliant on Worthy's self-reporting, but because it was inconsistent with Worthy's other statements about his ability to perform the activities of daily life without significant supervision, *see* (R. at 71), and with the results of Dr. Franklin-Zitzkat's own tests during the examination, although admittedly those tests were not administered in a workplace-like context, *see* (R. at 73) (citing Dr. Franklin-Zitzkat's report, (R. at 604), which found that Worthy "performed adequately" on a concentration test and exhibited only "mild difficulty" on the short-term memory test).

The ALJ also properly relied on elements of Worthy's longitudinal medical history that at least indirectly undermined the weight of Dr. Franklin-Zitzkat's opinion. Neither the ALJ nor either party here identified any evidence in the record that any other examining or treating physician had directly addressed Worthy's memory or concentration issues. Instead, however, the ALJ pointed to evidence in the record that Worthy had "a normal mood and affect" and that his mental functioning was "stable." *Id.* The Commissioner provides additional citations in the record to examining physicians' observations that Worthy showed "no mental abnormalities" and had a "normal mood" or affect. Def.'s Br. at 9–10. Those observations were not made with the pressures and stresses of the workplace in mind, *see Scandura*, 2009 WL 648611, at *9, and

17

they do not directly discuss Worthy's memory or concentration. Nevertheless, the ALJ was "entitled to consider the lack of evidence demonstrating severe mental limitations," such as marked difficulties with memory and concentration, in assessing the weight of Dr. Franklin-Zitzkat's opinions. *Bruno v. Colvin*, 2016 WL 3661243, at *7 (D. Vt. July 5, 2016); *see also id.* ("'The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say.'") (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)) (alterations in original).

Accordingly, the ALJ did not err in discounting Dr. Franklin-Zitzkat's opinion that Worthy had the enumerated "marked" limitations, and accordingly there is no need to remand on that basis.

### D. Assessment of Worthy's Credibility

Finally, Worthy asserts that the ALJ erred when he found that Worthy's own testimony regarding the "intensity, persistence and limiting effects" of his symptoms to be "not entirely credible." (R. at 68)

The parties agree that when evaluating the credibility of a claimant's testimony, in addition to considering the objective medical evidence in the record, the ALJ must consider the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 at *3 (S.S.A. July 2, 1996).

The ALJ found Worthy's testimony regarding the extent of both his physical and his mental limitations to be not entirely credible. With respect to the physical limitations, as the Commissioner points out, the ALJ does appear to have explicitly discussed many of the SSP 96-7p factors—he discussed what he viewed as inconsistencies with the objective medical evidence and treatments, and evidence regarding Worthy's ability to engage in the activities of daily living. (R. at 68–70)

With respect to the mental health issues, despite making an earlier finding that Worthy suffered from the "severe impairments" of depression and anxiety, the ALJ also stated that the extent of the limitations about which Worthy complained were "not entirely credible" (R. at 68) He stated that: "Although [Worthy] testified to . . . recurrent depression and anxiety contributing to his difficulty with concentration, as discussed, the evidence of record shows that he has a higher level of functioning than alleged." *Id.* The difficulty in assessing the ALJ's determination here, however, is that the ALJ does not specify *which* of Worthy's "allegations" are being rejected. The parties agree that Worthy did not testify directly about his mental limitations at all during the hearing, and his brief before the hearing relies wholly on Dr. Franklin-Zitzkat's report to establish his mental health limitations. *See* (R. at 364). Accordingly, it is unclear how or why Worthy was found to be non-credible, or what effect that credibility determination had on the RFP. Such an ambiguous statement "prevent[s] the Court from determining whether findings

19

about [Worthy's] credibility ought to be upheld under the deferential standard of review," and accordingly constitutes legal error. *Hogan v. Astrue*, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007).

Like with Dr. Franklin-Zitzkat's opinion, however, the ALJ's error here is harmless. Worthy's failure to make any statement about the impact of his mental health on his ability to work cannot reasonably be understood to *support* a finding that it does so.

## IV. Conclusion

Worthy's motion for remand is **denied** (doc. 12) and the Commissioner's motion to affirm is **granted** (doc. 14). The Clerk shall enter judgment and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of March 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge